IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

**SHARON BEGAY-MCABE, Individually,**
**and as Administrator for the Estate**
**of SHARINDA FELOCITA CHAVEZ, Deceased,**

      Plaintiffs,

vs.                                                         No.

**THE UNITED STATES OF AMERICA,**

      Defendant.

## COMPLAINT FOR MEDICAL NEGLIGENCE, PERSONAL INJURIES, AND WRONGFUL DEATH ARISING UNDER THE FEDERAL TORT CLAIMS ACT

Plaintiffs, by and through their attorneys of record, Theodore W. Barudin [BARUDIN LAW FIRM, P.C.], and for their complaint against the Defendant, state and allege:

### I.   PARTIES AND JURISDICTION

1. This is an action pursuant to the Federal Tort Claims Act, 28 USC §§ 1346(b), 2671, *et. seq.* (hereinafter the "FTCA") for medical negligence at the Northern Navajo Medical Center ("NNMC") operated as an Indian Health Services medical facility located in Shiprock, New Mexico, by the United States of America through the Department of Health and Human Services.

2. Sharinda Felocita Chavez was an enrolled member of the Navajo Nation, a federally recognized tribe of Indians.

1

3.      Sharon Begay-McCabe is the mother of Sharinda Chavez and is a resident and citizen of Window Rock, Navajo Nation, State of Arizona and is the duly appointed Administrator of the Estate of Sharinda Chavez as ordered by the Shiprock District Court, and docketed at SR-FC-DM-258-2012.

4.      Defendant, United States of America, through its agents, employees, and through the Department of Health & Human Services, Public Health Service, and Indian Health Service, all federal agencies, at all times hereinafter mentioned, did and now does, operate a hospital entitled the Northern Navajo Medical Center in Shiprock, New Mexico, where all claims of negligence arose.

5.      The claims for which Plaintiffs sue herein arose from the acts and omissions of Defendant as alleged herein all occurring within the State of New Mexico.

6.      If the Defendant was a private person, it would be liable to the Plaintiffs in accordance with the laws of the State of New Mexico.

7.      On January 4, 2013, within two years of the date of claims set forth herein which are subject to the FTCA, the administrative claims were presented to the United States Department of Health and Human Services, Public Health Service/Indian Health Service, pursuant to 28 U.S.C. §2675(a).  Said agencies have failed to make a final disposition of Plaintiffs' claims within six months of presentation to Defendant. Plaintiffs deem such failure to be a denial of their claims as provided by the FTCA.

8.      This Court has jurisdiction over the parties and subject matter hereto pursuant to 28 U.S.C. §1346(b) and the amount in controversy, excluding costs, attorney fees, or punitive damages, exceeds $75,000.00.

9. To serve the predominately Native American population of Northern Arizona and Western New Mexico, the United States Public Health Service/Indian Health Service (hereinafter "PHS/IHS") operates and maintains the Northern Navajo Medical Center, Shiprock, New Mexico where medical services are provided to qualifying members of the Native American community.

## FACTUAL ALLEGATIONS COMMON TO ALL COUNTS

10. Plaintiffs re-allege and incorporate by reference the allegations contained in Paragraphs 1 through 9 as though fully recited at length herein.

11. Plaintiff decedent was injured in a worker compensation injury on or about June 20, 2008 where she injured her low back and was diagnosed with lumbar disc injury with chronic pain.

12. At said time, plaintiff decedent was a nursing assistant and was helping a client get up out of bed when the client had a bowel movement in his diaper wherein she helped the client and cleaned him up.

13. At this time, she was pulling on a new Depends diaper for him, when he suddenly fell over backwards onto her arms which caused a significant pulling in her back and had immediate pain in her right leg and lower back.

14. Plaintiff decedent had herniation of three discs in the lower back as a proximate result of the worker compensation injury.

15. Throughout the time of her worker compensation injury up to the time of her death, Plaintiff decedent had on going and intense back pain.

16. While being treated for the work related injury, plaintiff decedent was administered Cymbalta 60 mg in the morning and 30 mg at night. She was also provided

3

psychological treatment and pain management for her injuries from the worker compensation claim.

16.     Over the course of her treatment at the NNMC, Plaintiff decedent was administered continued amounts of pain medication, narcotics, fetanyl patches, morphine sulfate, and other opiate drugs administered by the medical personnel at NNMC for plaintiff decedent's chronic pain.

17.     On September 24, 2010, Plaintiff decedent presented to NNMC for ongoing pain management wherein Dr. Kitson indicated it was doubtful that the patient could "remain for life on fentanyl, morphine, dilaudid, valium, Baclofen, Neurontin and Flexeril without risk of cognitive decline".

18.     On April 22, 2011, Plaintiff decedent Ms. Chavez was discharged home after undergoing a laparoscopic cholecystectomy in "fair" condition with instructions to follow up on May 18, 2011 with Dr. Brunk. According to Stephen Keller, PA-C, her medications at discharge included:

1. Baclofen 10 mg, one tablet t.i.d. (*muscle relaxer*)
2. Cyclobenzaprine 10 mg, one tablet for painful spasms (*muscle relaxer*)
3. Diazepam 5 mg, two tablets at bedtime (*benzodiazepine*)
4. Fentanyl 100 mcg, two patches every 72 hours (*opioid*)
5. Furosemide 40 mg, two tablets every morning
6. Gabapentin 600 mg, 1 ½ tablets by mouth three times a day
7. Hydromorphone 25 mg, one tablet three times a day *(opioid)*
8. Levothyroxine 100 mcg, one tablet every morning
9. Metoclopramide 10 mg, ½ tablet three times a day
10. Metoprolol XL 100 mg, one tablet daily
11. Morphine 30 mg IR, one tablet at bedtime *(opioid)*
12. Norethindrone/Ethinyl for birth control
13. Ranitidine 150 mg, one tablet two times a day
14. Trazodone 50 mg, one tablet at bedtime (*anti-depressant*)
15. Venlafaxine 75 mg, two tablets every morning and one at night *(anti-depressant)*

19. On December 13, 2011, NNMC prescribed diazepam, birth control medication, fentanyl 100 mcg patches, Lasix, and gabapentin 600 mg. On said date, her medications were listed on several pages.

20. On January 12, 2012, plaintiff decedent presented to NNMC with several days of nausea, vomiting and diarrhea. She was not able to keep down food, fluid or medication and her pain had become incapacitating. She was admitted to NNMC.

21. On said date, plaintiff decedent was still using two patches of 100 mcg of fentanyl per hour, with the patches being changed every 72 hours. Plaintiff decedent was also on hydromorphone 2 mg, one tablet per mouth three times a day.

22. In patient medications included:

1. Diazepam 5 mg at bedtime
2. Droperidol Injection every four hours as needed
3. Fentanyl 100 mcg/hr patch, two patches every 72 hours *(opioid)*
4. Gabapentin 900 mg three times a day
5. Hydromorphone Injection every four hours as needed *(opioid)*
6. Levothyroxine 0.1 mg every morning
7. Loperamide 4 mg every six hours as needed *(opioid)*
8. Metoclopramide 5 mg three times a day
9. Metoprolol XL 100 mg every day
10. Potassium Chloride 20 meq daily
11. Ranitidine 150 mg twice a day
12. Trazodone 50 mg every night as needed
13. Venlafaxine 75 mg twice a day

23. On January 14, 2012, plaintiff decedent presented to the NNMC with a reported pain level of an 8/10 in the back and abdomen. She was medicated with two doses of 2 mg of Dilaudid and two doses of Peridol prior to being discharged. She was still wearing the fentanyl patches.

24. On January 21, 2012, plaintiff decedent died at her home.

25. The autopsy was done on January 23, 2012.

5

26. The reported cause of death was acute fentanyl intoxication.

27. Plaintiff decedent had an extremely high level of fentanyl. This drug was present in her bloodstream in a concentration of 155 ng/ml.

28. The therapeutic range of fentanyl is 1 to 3 ng/ml.

29. There were also multiple depressive drugs which interact producing an enhanced and often dangerous combined effect.

30. Plaintiff decedent was given extremely high levels of fentanyl combined with other medications and such drug overdose was a direct and proximate cause of plaintiff decedent's death on January 22, 2012.

31. When plaintiff decedent went to NNMC, she was no longer given Cymbalta. She was placed on other drugs, narcotics and the fentanyl patches were used in ever increasing doses to control her pain.

32. Dr. Brunk, the treating physician at NNMC, indicated in plaintiff decedent's chart that there was no effort on his part to decrease her pain level using Cymbalta or other similar drugs; no effort to increase her exercise program; no effort to have her quit smoking; no pain counseling; and, maintained the status quo of her narcotic medication regime.

33. NNMC failed to include any rescue medication such as Naloxene to help counteract the activities of the narcotics if she happened to be overdosed.

34. NNMC and its medical personnel, including Dr. Brunk, negligently took plaintiff decedent off of Cymbalta, and placed her on other drugs, and increased her use of narcotics dramatically, which was the proximate cause of her overdose on January 21, 2012.

35. NNMC and its medical personnel, including Dr. Brunk, increased her use of fentanyl with 100 mcg per hour patch, two of them at a time, producing 200 mcg per hour, which is a dose that is in far excess of what is recommended to control pain.

36. Because of NNMC's failure to, *inter alia*: get plaintiff decedent off of narcotics, to stop her smoking, to help her lose weight, to recommend lap banding to help her lose weight, to recommend an exercise program, to recommend to change her activities, to recommend psychological and pain counseling treatment for her work related injury, such failures fell below the standard of care which proximately caused plaintiff decedent's death.

## COUNT I

### MEDICAL NEGLIGENCE AGAINST DEFENDANT THE UNITED STATES OF AMERICA

37. Plaintiffs re-allege and incorporate by reference the allegations contained in Paragraphs 1 through 36 as though fully recited at length herein.

38. At all times material hereto, the relationship of medical provider-patient existed between Sharinda Chavez and the physicians at the Northern Navajo Medical Center, and other treating physicians and medical personnel.

39. Pursuant to the provision of the Federal Tort Claims Act, Defendant United States of America is liable for the negligent acts, omission, and errors of its employees or agents acting with in the scope of their duties, as well as liable for any and all independent contractors who may be employed and under the control and direction of Defendant at its medical facilities.

40. At all times pertinent hereto, and as to all acts alleged herein, the physicians and other medical providers and personnel were employees or agents of

Defendant, acting within the scope of their duties, and otherwise acting with the full knowledge and consent of Defendant.

41. Defendant is therefore vicariously liable for the negligent acts of the physicians at Northern Navajo Medical Center and other medical personnel as alleged herein.

42. Defendant owed the decedent the duty to provide medical care of a nature and quality that was appropriate for a patient such as Sharinda Chavez.

43. In treating and caring for Sharinda Chavez, Defendant failed to exercise ordinary care, and this failure proximately resulted in the death of Sharinda Chavez. Among other things, Defendant's employees at Northern Navajo Medical Center, whose conduct Defendant is liable were negligent, without limitation, in the following regards:

A. Failure to possess and apply the knowledge, skill, and care of a reasonably well qualified practitioner under similar circumstances;

B. Failure to use reasonable care when performing examinations, care, and treatment of Sharinda Chavez;

44. As a direct, proximate and foreseeable result of the negligent acts and omissions of Defendant, Sharinda Chavez died on January 22, 2012.

## COUNT II

### NEGLIGENT SUPERVISION, TRAINING, MANAGEMENT, HIRING, CREDENTIALING, RETENTION

45. Plaintiff re-alleges and incorporates by reference the allegations contained in Paragraphs 1 through 44 as though fully recited at length herein.

46.     Upon information and belief, Defendant improperly trained, supervised, managed, hired, credentialed, retained medical personnel, including without limitation, physicians and nurses in the medical care of Sharinda Chavez at the NNMC.

47.     Said medical personnel were, without limitation, negligently trained, supervised, directed, credentialed, retained, and managed in the medical care at the NNMC failed to timely and adequately diagnose and treat Sharinda Chavez, which proximately caused her death and damages to Plaintiff.

48.     It is further alleged that as a result of medical negligence, and/or nursing negligence, and negligent supervision, training, direction, control, hiring, retention, and yet to be determined additional negligent conduct, Defendant and its personnel, agents, independent contractors, and other persons and institutions, failed to possess and apply the knowledge, skill, and care of other reasonably well qualified practitioners and administrators under similar circumstances, which proximately caused the death of Sharinda Chavez and damages to Plaintiffs.

49.     Among other things, Defendant, by and through its employees, agents, and/or independent contractors at the NNMC, were negligent, without limitation, in the following regards:

A.     Failure to possess and apply the knowledge, skill, and care of reasonably well qualified practitioners under similar circumstances;

B.     Failure to use the utmost care when evaluating and treating Sharinda Chavez for her medical condition at the NNMC;

C. Failure to fully and properly examine Sharinda Chavez during the time period she was being evaluated for her medical condition(s) or other unknown medical conditions;

D. Failure to follow proper protocols for the review and acts required of medical personnel for a person such as Sharinda Chavez;

E. Failure to properly train its medical and/or nursing staff in the monitoring of persons in the necessary protocols for contacting medical personnel to provide reasonable care for pain management, addiction, potential overdose, and other yet to be determined failures;

50. As a direct, proximate and foreseeable result of the negligent acts and omissions of Defendant, Sharinda Chavez died on January 22, 2012.

## COUNT III

## LOSS OF CONSORTIUM

51. Plaintiff re-alleges and incorporates by reference the allegations contained in Paragraphs 1 through 49 as though fully recited at length herein.

52. Plaintiff Sharon Begay-McCabe brings her claims individually for the loss of consortium caused by Defendant's negligence in depriving her of the full and enjoyable companionship, love, and association with her daughter, Sharinda Chavez.

53. Plaintiff Sharon Begay-McCabe, the mother of Sharinda Chavez, had a close and intimate relationship with her child and has suffered ongoing emotional distress, loss of society, guidance, and companionship with Sharinda Chavez.

WHEREFORE, Plaintiffs pray for an award of damages sufficient to fully compensate Plaintiff for all the injuries and damages described herein, for interest as

allowed by law, for taxable costs, and for such other further relief as the Court may deem proper.

        Respectfully submitted,

        BARUDIN LAW FIRM, P.C.

        By    */s/ **Theodore W. Barudin***
               Theodore W. Barudin
               7900 Menaul Blvd NE
               Albuquerque NM  87110-4606
               (505) 332-1800
               Barudinlaw@aol.com